FILED

November 29, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:03 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| ABDUL ODEM, | ) | Docket No. 2016-06-0657 |
| Employee, | ) | |
| v. | ) | State File No. 26740-2016 |
| TYSON FOODS, | ) | |
| Employer. | ) | Judge Joshua Davis Baker |

## EXPEDITED HEARING ORDER DENYING TEMPORARY DISABILITY AND MEDICAL BENEFITS

This claim came before the Court on November 3, 2016, on the Request for Expedited Hearing (REH) filed by Abdul Odem pursuant to Tennessee Code Annotated section 50-6-239 (2015). At issue is Mr. Odem's entitlement to temporary total disability and medical benefits for bilateral carpal tunnel syndrome (CTS). The parties do not dispute that Mr. Odem suffered from bilateral CTS. However, Tyson Foods has raised lack of notice and compensability as defenses. Based on the proof before it, the Court denies Mr. Odem's claim for temporary disability and medical benefits at this time.[1]

## History of Claim

In June 2015, Mr. Odem began working as a truck loader in Tyson's food processing plant. His duties mainly included using a pallet jack to transport boxes of food from the packaging area to the shipping area. Mr. Odem explained that the pallet jack, or "mule," had a throttle that he had to constantly manipulate while driving several miles through the plant each day. He stated that, after working in that position for approximately a month to a month and a half, he began experiencing pain, numbness, throbbing and burning in both hands. He even experienced the pain in his sleep and testified that sometimes he slept only two or three hours and other times he did not sleep. Due to a work schedule that provided him three consecutive days off each week, Mr. Odem testified he worked with the pain for four days and then saw a doctor and "healed up" over his three days off.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

On October 15, Mr. Odem sought treatment through his private insurance from Dr. Philip Coogan. Dr. Coogan diagnosed Mr. Odem with severe bilateral CTS and administered several cortisone shots before scheduling surgery for March 18, 2016. Because the pain was severe, Dr. Coogan advanced the surgery date and performed the operation on March 4. (Ex. 1 at 1.)

In a medical note prepared several weeks after surgery, Dr. Coogan wrote the following concerning the cause of Mr. Odem's bilateral CTS: "The patient describes moving thousands of the cases a day, 32 cases per pallet, 30 pallets per truck and 4 to 6 trucks a day. I believe it is the arithmetic. This certainly sounds like it could be a significant contributor to his current complaints." (Ex. 1 at 7.)

Mr. Odem did not report his condition to Tyson as work-related until after he had surgery. (Ex. 5.) Just prior to his surgery, Mr. Odem told Crystal Whitelaw, a Tyson human resources employee, that he would need to be out to have surgery. In an affidavit, Ms. Whitelaw stated Mr. Odem visited her to inquire about receiving short-term disability benefits. (Ex. 9 at 1.) Mr. Odem agreed he did not tell Ms. Whitelaw that the surgery could be related to his work for Tyson at that time.

Mr. Odem gave several reasons for failing to report his bilateral CTS to Tyson. He first testified he did not know he had to report the condition to a supervisor. However, on cross-examination he acknowledged receiving notification of his duty to report a workplace injury when his employment with Tyson ensued. (Exs. 10, 11.) He then stated that he did not want to miss work because of his injury. He described his job as "competitive," and feared he could lose it if he had to take time off for treatment. However, after he learned he would have to miss work for an extended period to recover, Mr. Odem stated he had no choice but to report his condition to Tyson.

After he reported his condition, Tyson provided Mr. Odem a panel of physicians. On March 15, he selected Dr. C. Robinson Dyer. (Ex. 8 at 3.) Dr. Dyer declined to treat Mr. Odem, so he next selected Dr. David Moore from the same panel. *Id.* at 2. Dr. Moore also declined to treat him, so he selected the last physician remaining on the panel, Dr. Steve Salyers. *Id.* at 1. Mr. Odem also signed a form acknowledging he received the panel and selected a physician from it. (Ex. 14.)

Dr. Salyers saw Mr. Odem only one time for an examination. Mr. Odem described the examination as very brief, lasting only three minutes. In the medical report from that visit he wrote:

> Severe carpal tunnel syndrome would not develop in the two to three months that he had worked for [sic] at Tyson doing that particular job. I can state that with greater than 51% reasonable degree of medical certainty. In short, under the Tennessee statute, I do not think there is an established

2

causal relationship between his occupation exposure and his carpal tunnel syndrome. A much more likely causal fact is his 290 pound weight and morbid obesity.

(Ex. 1 at 28.) Given the results of the examination, Dr. Salyers declined to provide further care for Mr. Odem.

After receiving the causation opinion from Dr. Salyers, Tyson denied the claim. (Ex. 6.) Thereafter, Mr. Odem filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. 1 at 1.) After the parties failed to resolve their disputes through mediation, the mediator issued a Dispute Certification Notice vesting jurisdiction in this Court. (T.R. 2 at 2.) Mr. Odem filed a Request for Expedited Hearing, and this Court convened an evidentiary hearing to consider the claim.

## Findings of Fact and Conclusions of Law

In deciding Mr. Odem's request for additional medical benefits and temporary disability benefits, the Court must apply the following legal principles. Mr. Odem bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, Mr. Odem has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

Mr. Odem seeks temporary disability and medical benefits for bilateral CTS. As explained below, the Court finds he is not entitled to either category of benefits at this time.

**1.      Mr. Odem provided Tyson notice of his injury in a timely manner.**

Tyson raised lack of notice as a defense arguing that Mr. Odem failed to give notice within thirty days of the time he knew of a work-related injury. Because the notice issue is potentially determinative, the Court will address it first.

Mr. Odem seeks workers' compensation benefits for bilateral CTS, which he allegedly developed gradually. Tennessee Workers' Compensation Law provides the following concerning notice of gradual injuries:

3

(b)     In those cases where the injury occurs as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within thirty (30) days after the employee:

> (1)     Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

> (2)     Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. § 50-6-201(b) (2015).

Here, Mr. Odem began suffering symptoms of bilateral CTS a month or a month and a half after he began working for Tyson. However, he continued to perform his normal work activities despite suffering pain from the condition. It was not until March 2016 that he learned he would be unable to work for an extended period of time while he recovered. On March 15, eleven days after his surgery, he notified Tyson he needed to take time off. Taking time off from work completely would obviously prevent Mr. Odem from performing his normal work activities. At that time, Tyson offered Mr. Odem a panel. Accordingly, Tyson had notice of Mr. Odem's bilateral CTS condition and its potential causal relationship to work within thirty days of the condition rendering him unable to perform his normal work activities. For that reason, Tyson's notice defense must fail.

**2.     Mr. Odem failed to show a causal relationship between his injury and his work for Tyson**

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" *See* Tenn. Code Ann. § 50-6-204(a)(l)(A) (2015). In providing the treatment, the Workers' Compensation Law requires an employer to, "designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician." *Id.* at 50-6-204(a)(3)(A)(i). In cases where the employer provides a panel and the physician selected by the employee declines to provide treatment, the employee has two options: (1) select a physician from the remaining choices on the panel, or (2) ask that the employer place another physician on the panel to replace the physician who declined to provide

4

treatment. *Id*. at § 50-6-204(a)(3)(G).

Through process of elimination, Mr. Odem selected Dr. Salyers as the authorized treating physician. He first selected the other two panel physicians, but each declined to treat him. He then chose Dr. Salyers, the last physician remaining on the panel. Although Mr. Odem could have required Tyson to replace the physicians who declined to treat him, he did not testify that he asked Tyson do so. Accordingly, Mr. Odem selected Dr. Salyers from a valid panel, and he is Mr. Odem's authorized treating physician for his CTS.

The Workers' Compensation Law affords a presumption of correctness to the causation opinion provided by a physician selected from a panel; however, the presumption can be rebutted through presentation of contrary evidence that satisfies a preponderance standard. *Id*. at § 50-6-102(14)(E). Furthermore, any medical opinion supporting causation must be provided by the physician within a "reasonable degree of medical certainty." The Workers' Compensation Law defines the phrase "shown to a reasonable degree of medical certainty" to mean that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." *Id.* at § 50-6-102(14)(D) (2015).

Dr. Salyers' medical report stated that Mr. Odem's work for Tyson did not cause his bilateral CTS. He wrote: "Severe carpal tunnel syndrome would not develop in the two to three months that he had worked for [sic] at Tyson doing that particular job. I can state that with greater than 51% reasonable degree of medical certainty." (Ex. 1 at 28.) Instead, Dr. Salyers believed Mr. Odem's CTS stemmed from weight and "morbid obesity." This opinion is presumed correct, and Mr. Odem must rebut that presumption in order to prevail.

The only other causation opinion in the record comes from Dr. Coogan. In his medical records, he stated that Mr. Odem's work for Tyson moving pallets of packaged food "certainly sounds like it could be a significant contributor to his current complaints."[2] (Ex. 1 at 7.) The Court finds Dr. Coogan's opinion speculative in that he opined Mr. Odem's work activities "could be a significant contributor to his current complaints." Because Dr. Coogan's opinion is speculative, it is insufficient to overcome the presumption of correctness attached to Dr. Salyers' opinion. Accordingly, the Court holds that Mr. Odem is unlikely to prevail at a hearing on the merits in proving he suffered a compensable workplace injury. Furthermore, because Mr. Odem cannot prove

---

[2] Mr. Odem attempted to introduce a May 2, 2016 medical record from Dr. Coogan, which provided a much stronger causation opinion, as an exhibit. Tyson objected to admission of the medical record because counsel claimed to have not seen the record until the day of the hearing. Mr. Odem said he believed he emailed a copy of the record to Tyson prior to the hearing. The Court accepted the record for identification purposes and gave Mr. Odem until November 10 to file a copy of the email showing he forwarded the record to Tyson. Mr. Odem failed to file the email. The Court, therefore, sustains Tyson's objection.

his injury is compensable, the Court denies his claim for medical benefits. Applying the same principle—lack of a causal relationship between Mr. Odem's work for Tyson and his bilateral CTS—the Court also denies Mr. Odem's claim for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Odem's claim for temporary disability and medical benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on January 13, 2017, at 11:00 a.m. (CST).

**ENTERED THIS THE 29th DAY OF NOVEMBER, 2016.**


_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note:  You must call in on the scheduled date/time to  participate.  Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).**


Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Medical records
2. May 2 medical note of Dr. Coogan (For identification purposes only)
3. Mr. Odem's affidavit
4. Edward Covington's affidavit
5. First Report of Injury
6. Notice of Claim Denial
7. Wage Statement
8. Choice of Physician Forms
9. Affidavits of Crystal Whitelaw, Chris Rawls, Woody Dodds
10. Team Member Orientation Training checklist
11. Safety statement
12. Leave of Absence application
13. Team Member Statement of Injury
14. Choice of Physician Form Acknowledgement
15. Statement of financial responsibility

Technical record:[3]

1. PBD filed April 13 2016
2. DCN filed May 10, 2016
3. REH filed July 8, 2016
4. Tyson's Response to Mr. Odem's Request for Expedited Hearing
5. Tyson's Witness and Exhibit List
6. Tyson's Response to Mr. Odem's REH on the Record
7. Tyson's Response to Mr. Odem's REH

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 29th day of November, 2016.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|------|----------------|---------|-----------|---------------|
| **Abdul Odem** | X | | X | 323 Forrest Park Rd. Apt. 7-5 Madison, Tennessee 37115 abdul.odem@gmail.com |
| **Laurenn Disspayne** | | | X | ldisppayne@mainerherod.com |

_____

Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov